IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARRELL WILLIAM WHEELER, individually; DARRELL WILLIAM WHEELER, an American with a disability; PAULINE ELLIS, individually and in her capacity as guardian for Darrell William Wheeler and former Hilo Employee,<br><br>        Plaintiffs,<br><br>   vs.<br><br>HILO MEDICAL CENTER, INC., a public entity, et. al,<br><br>        Defendants.<br>_____ | ) CIVIL NO. 09-00533 JMS/KSC<br>)<br>) ORDER (1) GRANTING HILO<br>) MEDICAL CENTER'S MOTION TO<br>) DISMISS, (2) DISMISSING<br>) PLAINTIFF ELLIS' CLAIMS FOR<br>) LACK OF STANDING, (3)<br>) GRANTING MOVING<br>) DEFENDANTS' MOTION TO<br>) DISMISS AS TO COUNTS VI AND<br>) VII, AND (4) GRANTING MOVING<br>) DEFENDANTS' MOTION FOR<br>) SUMMARY JUDGMENT AS TO<br>) COUNTS I - V, VIII, AND IX<br>)<br>)<br>) |

**ORDER (1) GRANTING HILO MEDICAL CENTER'S MOTION TO DISMISS, (2) DISMISSING PLAINTIFF ELLIS' CLAIMS FOR LACK OF STANDING, (3) GRANTING MOVING DEFENDANTS' MOTION TO DISMISS AS TO COUNTS VI AND VII, AND (4) GRANTING MOVING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I - V, VIII, AND IX**

## I.  INTRODUCTION

On November 5, 2010, Plaintiffs Darrell William Wheeler ("Wheeler)

and Pauline Ellis ("Ellis") (collectively, "Plaintiffs") filed a Complaint alleging

various medical malpractice and other claims arising from Wheeler's October 26,

2002 head injury and subsequent medical treatment.  Following his injury, Wheeler

was hospitalized at three different hospitals -- each of which is now a Defendant in the present suit -- from October 26, 2002 until March 25, 2003.  Plaintiffs allege that during Wheeler's hospitalization, various doctors administered penicillin -- to which Wheeler has a known allergy -- and otherwise misdiagnosed and mistreated Wheeler.  Following this injury and treatment, Wheeler has been disabled and in need of 24-hour care.

On January 22, 2010, Defendant Hawaii Health Systems Corp d/b/a Hilo Medical Center ("HMC") filed a Motion to Dismiss based on its Eleventh Amendment immunity.  Doc. No. 48.  As the court ruled from the bench on March 15, 2009 and sets forth in greater detail below, HMC's Motion to Dismiss is GRANTED.

Also on January 22, 2010, Defendants Robin A. Edwards ("Edwards"), Steven J. Garons ("Garons"), David Y. Nakamura ("Nakamura"), Meng-Chen Roe ("Roe"), Rehabilitation Hospital of the Pacific ("Rehab Hospital"), Gerald E. Lau ("Lau"), Mankwan T. Wong ("Wong"), and Queens Medical Center ("QMC") (collectively, "Moving Defendants") filed various Motions to Dismiss (Moving Defendants' Motion to Dismiss).  Doc. Nos. 44, 45, 47, 51.  In addition, Moving Defendants filed, in the alternative, for summary

2

judgment ("Moving Defendants' Motion for Summary Judgment"[1]).  Doc. No. 45.

In these Motions, Moving Defendants contend that dismissal and summary judgment are appropriate because Plaintiffs' First Amended Complaint ("FAC") suffers from a variety of procedural and substantive defects, including standing problems, failure to state a claim upon which relief can be granted, and failure to file within the statute of limitations period.  The court agrees and, for the following reasons, DISMISSES Ellis' claims for lack of standing, GRANTS Moving Defendants' Motion to Dismiss as to Counts VI and VII, and GRANTS Moving Defendants' Motion for Summary Judgment as to Counts I - V, VIII, and IX.

## II.  BACKGROUND

### A.    Factual Background

On October 26, 2002, Wheeler suffered a head injury, which was allegedly inflicted by Defendants Daniel Vea ("Vea") and Levi Cabanting ("Cabanting").[2]  FAC ¶¶ 21, 22.  Following his injury, Wheeler was taken by ambulance to HMC.  *Id.* ¶ 21.  Wheeler had previously sought outpatient treatment

---

[1]  The court references Rehab Hospital's Motion, Doc. No. 45, as Moving Defendants' Motion for Summary Judgment because Moving Defendants have substantively joined this Motion.  Doc. Nos. 53, 55, 56, 60, 61.

[2]  Cabanting was improperly named in the caption as "Levi Cabuntine."

at HMC and his medical records on file at HMC indicted that Wheeler has a severe allergy to penicillin. *Id.* ¶ 23. Wheeler arrived at HMC's emergency trauma center at 2:30 p.m. on October 22, 2002. On October 26, 2002, Defendant Gary Smith ("Smith"), a doctor employed by HMC, allegedly administered several injections of penicillin to Wheeler. *Id.* ¶ 24. Smith allegedly did so despite emergency room staff assuring Ellis that they knew of Wheeler's allergy and a note in Wheeler's medical files which stated, "Nursing ER assessment notes allergy to PCN [*i.e.*, penicillin]. Doctor Smith notes allergy." *Id.* ¶ 24.

Thereafter, Plaintiff was treated by HMC doctors including Edwards, Lau, Pillai,[3] and Nakamura. *Id.* ¶¶ 26, 29, 31, 31. Although the timing is unclear from the FAC, Wheeler contends that "for thirty hours [he] had no doctor visits, no neurological consults, no anesthesiology consults, no cardiac consult, [and] no follow up labs of any kind. No treatment except nursing intervention." *Id.* ¶ 30. Jill Warkentin ("Warkentin"), a nurse at HMC, observed Wheeler at this time and was "shocked" by his appearance. Doc. No 100, Ex. A at 1. Warkentin contends that another nurse at HMC told her that Wheeler "had not been seen for two days by a doctor and needed to be seen for head trauma." *Id.* Warkentin apparently

---

[3] Plaintiffs do not fully identify Pillai, but reference him as "HILO's Doctor Pillai (deceased)." FAC ¶ 31.

later told Ellis about this exchange in October 2003.  *Id.*

On October 27, 2002, Edwards indicated that Wheeler was "stable and breathing on his own, CAT scan normal, no neuro trauma, no abnormalities, from CAT scan."  FAC ¶ 26.  The FAC alleges that Wheeler's throat and speech were altered by Edwards' negligence in not following HMC's protocol for head injury patients.  *Id.* ¶ 27.  The FAC also alleges that Lau contributed to Wheeler's injuries by failing to act.  *Id.* ¶ 29.

On October 28, 2002, Nakamura ordered three additional injections of penicillin.  *Id.* ¶ 32.  Wheeler allegedly had an anaphylactic reaction to the penicillin and alleges that Nakamura then denied him basic life saving treatment. *Id.* ¶ 35.  The FAC alleges that Ellis "became aware of the deliberate injections of Penicillin and multiple assaults that were done with the intent to kill [Wheeler]." *Id.* ¶ 33.  Thereafter Ellis allegedly witnessed Nakamura alter medical records to hide his and other doctors' errors in treating Wheeler.  *Id.* ¶ 33.

At an unclear time during his stay at HMC, Wheeler received treatment from Garons.  The FAC alleges that "Garons enjoyed the assaults [on Wheeler] by failing to stop the events."  *Id.* ¶ 39.  Garons also allegedly caused Wheeler's lung to collapse by setting a ventilator assisting Wheeler's breathing to a high setting.  *Id.* ¶ 40.  Garons then allegedly input false information into

Wheeler's medical records.  *Id.* ¶ 41.

On October 30, 2002, Wheeler was transferred by air from HMC to QMC.  *Id.* ¶¶ 36, 49.  Nakamura allegedly injected Wheeler with penicillin before the transfer and then failed to inform the flight crew or QMC that Wheeler had a penicillin allergy and was in anaphylactic shock.  Plaintiffs contend that Wheeler was transferred from HMC to QMC as a result of an agreement among HMC officers and doctors to "patient dump" Wheeler on QMC.  *Id.* ¶¶ 38, 43.  At the time of the transfer, Wheeler was "gravely ill" and "his eyes were bugging out of his head."  *Id.* ¶ 45.

When he arrived at QMC, Wheeler was examined by Defendant Mihae Yu ("Yu"), a doctor employed at QMC.  Plaintiffs allege that Yu misdiagnosed Wheeler with a thyroid problem.  *Id.* ¶ 51.  Plaintiffs allege that Yu and QMC caused Wheeler to sustain "permanent, life altering injuries, commonly referred to as contractures, leaving [Wheeler's] right hand and arm, and left leg, permanently insulted."  *Id.* ¶ 50.  Wheeler also underwent surgery at QMC to sever both of his Achilles tendons, which was intended to make his feet look normal.  As a result, Wheeler is unable to walk or run as he once did.  *Id.* ¶ 51.

Following his treatment at QMC, Wheeler was transferred to Rehab Hospital.  Plaintiffs contend that Wheeler was "patient dumped" at Rehab Hospital

6

"without a plan of care, no physical therapy, nothing." *Id.* ¶ 52. While at Rehab Hospital, Wheeler was treated by Roe, who allegedly over-medicated him and induced a life-threatening condition. *Id.* ¶ 53. Plaintiffs contend that Rehab Hospital denied Wheeler "the one chance of intensive acute rehabilitation" and wrongfully downgraded Wheeler's level of care prematurely. *Id.* ¶¶ 55, 56.

Wheeler was released from Rehab Hospital on March 25, 2003 and continues to require continuous care. *Id.* Ex. F. In June 2003, a state court appointed Ellis as Wheeler's legal guardian.[4] A report submitted to the state court in March 2003 states that Wheeler had suffered injuries as a result of receiving penicillin and mentioned his Achilles tendon operation. *Id.* Ex. A, Report of the Kokua Kanawai, at 2-3. The report states that "[t]he purpose of this guardianship of [Wheeler's] property is to have someone appointed to protect, investigate and pursue possible personal injury claims that the protected person may have against the parties (including Hilo Medical Center, the emergency room physician, unknown assailant) which have caused his injuries." *Id.* Ex. A, Report of the Kokua Kanawai, at 1-2. Plaintiffs allege that "[l]ast year [Wheeler] became mentally aware that he needed to pursue a claim for his damages and injuries."

---

[4] The court takes judicial notice of the guardianship proceedings in the Circuit Court of the Third Circuit, State of Hawaii in G. No. 03-1-0005. *See* Doc. No. 51, Ex. A.

FAC ¶ 62.

## B.      Procedural Background

Plaintiffs filed the Complaint on November 5, 2009 and the FAC on December 30, 2009.  Plaintiffs allege claims against Moving Defendants, Ronald Schurra ("Schurra"), Smith, Hawaii Air Ambulance, Yu, Richard Roe,[5] Vea, and Cabanting (collectively, "Defendants").  Plaintiffs allege § 1983 violations against all Defendants except Vea and Cabanting (Counts I and II).  Against all Defendants, Plaintiffs allege claims for assault and battery (Count III), intentional infliction of emotional distress ("IIED") (Count IV), false imprisonment (Count V), Racketeering Influenced and Corrupt Organization ("RICO") (Count VII), negligence (Count VIII), and negligent infliction of emotional distress ("NIED") (Count IX).  Finally, Plaintiffs allege a claim for defamation, violations of the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320 *et seq.* ("HIPAA"), and California's Confidentiality of Medical Information Act of 1981 (Count VI).

On January 22, 2010, HMC filed its Motion to Dismiss, Doc. No. 48, and Moving Defendants filed their Motion to Dismiss and Motion for Summary

---

[5]  The name "Richard Roe" appears in the caption of the FAC.  Plaintiffs do not, however, make any specified allegations against Richard Roe in the FAC.  Further, it is unclear to the court whether Richard Roe is a named party or an unnamed John Doe.

Judgment.  Doc. Nos. 44, 45, 47, 51.  Moving Defendants moved to substantively

join one another's Motions.  Doc. Nos. 53, 55, 56, 60, 61.  On January 27, 2010,

Plaintiffs filed a RICO Case Statement.  Doc. No. 58.  On February 8, 2010,

Plaintiffs filed an Opposition.[6]  Doc. No. 63.  On February 19, 2010, Moving

Defendants filed various Replies.  Doc. Nos. 72, 75, 76, 77.

A hearing was held on March 15, 2010.  At the hearing, the court

GRANTED HMC's Motion to Dismiss.  Additionally, the court informed the

parties that it would address the statute of limitations issues raised by Moving

Defendants on summary judgment grounds, rather than as part of Moving

Defendants' Motion to Dismiss.  Because Plaintiffs stated that they did not

understand that Moving Defendants had filed for summary judgment, the court

provided Plaintiffs with an explanation of the summary judgment standard and

granted Plaintiffs leave to file a Supplemental Opposition in response to Moving

Defendants' Motion for Summary Judgment.

On April 5, 2010, Plaintiffs submitted a Supplemental Opposition.

Doc. No. 104.  On April 6, 2010, Plaintiffs submitted an additional Supplemental

Opposition.[7]  Doc. No. 100.  On April 16, 2010, Moving Defendants filed various

---

[6] The court construes Plaintiffs' "Objection to Combined Defendants' Motion to Dismiss re [Doc. Nos.] 44, 45, 48, 51, 47," Doc. No. 63, as an Opposition.

[7] Plaintiffs mislabel their Supplemental Opposition as a Reply.

Supplemental Replies.  Doc. Nos. 109, 110, 111, 112.

### III.  <u>STANDARDS OF REVIEW</u>

**A.**     **Rule 12(b)(1) Motion to Dismiss**

     *1.*     ***Motion to Dismiss for Lack of Subject Matter Jurisdiction***

       Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

       "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint -- it may consider facts and need *not* assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction.  *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Casumpang v. Int'l*

*Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

### 2.     Motion to Dismiss for Lack of Standing

"A plaintiff has the burden of establishing the elements required for standing." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  As an indispensable part of the plaintiff's case, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  To rule on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005).  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint.  The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Wilbur*, 423 F.3d at 1107.

**B.      Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. At 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Id.* at 1950.

///

///

12

### C.   Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). If the moving party carries its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

# IV. **DISCUSSION**

As the court held at the March 15, 2010 hearing, Plaintiffs' claims against HMC are barred.  HMC is part of the Hawaii Health Systems Corporation and as a result, it is an agency and instrumentality of the State of Hawaii, as provided in Hawaii Revised Statute ("HRS") § 323F-2(a).  HMC is entitled to the same privileges and immunities as the State of Hawaii and, as a result, is cloaked in the State of Hawaii's sovereign immunity.  HRS § 323F-7(c)(11).  Accordingly, Plaintiffs' claims against HMC are barred by the Eleventh Amendment.  *See Nye v. Hilo Med. Ctr.*, No. 33 Civ. 09-00220 (D. Haw. Sept. 8, 2009) (finding claims against HMC barred by Eleventh Amendment immunity).  The court therefore DISMISSED Plaintiffs' FAC as to HMC without leave to amend.

Now before the court are Moving Defendants' remaining Motions.  Moving Defendants contend Plaintiffs' claims should be dismissed because the court lacks subject matter jurisdiction, Ellis does not have standing, and Plaintiffs fail to state a claim upon which relief can be granted.  Additionally, Moving Defendants move for summary judgment on statute of limitations grounds.  The court addresses these arguments in turn.

14

## A.    Subject Matter Jurisdiction Over Plaintiffs' Claims

Moving Defendants contend that the court lacks subject matter jurisdiction over the entire FAC because no private rights of action exist under statutes cited in the FAC, including 18 U.S.C. § 1341, 18 U.S.C. § 1512, or HIPAA.[8]  Although Moving Defendants are correct that no private cause of action exists under 18 U.S.C. § 1341, 18 U.S.C. § 1512, or HIPAA, Plaintiffs also bring Fourth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 and a RICO claim.  Section 1983 unquestionably creates a private right of action over which federal courts have subject matter jurisdiction.  *Haywood v. Drown*, 129 S. Ct. 2108, 2111 (2009) ("In our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983, the statute that creates a remedy for violations of federal rights committed by persons acting under color of state law.").  Given that the court has subject matter jurisdiction over Plaintiffs' § 1983 and RICO claims, the court has supplemental jurisdiction over Plaintiffs' remaining claims.

///

///

---

[8]  For unclear reasons, Rehab Hospital also contends that Plaintiffs do not properly plead diversity jurisdiction.  Plaintiffs rely on federal question jurisdiction, not diversity jurisdiction, and thus this argument is immaterial.

B.     **Standing**

Moving Defendants contend that Ellis lacks standing on all claims. The court agrees.

Standing is part of the "case or controversy" requirement of Article III of the United States Constitution.  "A plaintiff has the burden of establishing the elements required for standing."  *Takhar*, 76 F.3d at 1000.  To demonstrate standing, a plaintiff (1) must suffer an injury in fact, and show both (2) causation and (3) redressability.  *Friends of the Earth, Inc.*, 528 U.S. at 180.  In order to show causation, a plaintiff must allege that her injury is "fairly traceable to the defendant's allegedly unlawful conduct."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

The great majority of the allegations in the FAC concern injuries to Wheeler.  The only allegations of injury in fact suffered by Ellis are that she has "suffered damage to . . . property," "lost income from [her] normal occupation, and will continue to lose said income in the future," and was "personally traumatized" by witnessing the harms allegedly inflicted on Wheeler.[9]  FAC ¶¶ 58, 59, 97.  The first and second allegations of injury -- *i.e.*, those concerning economic loss to Ellis

_____

[9]  The FAC states that "Plaintiff PAULINE ELLIS former state actor whistleblower did personally witness the event and did live personally traumatized by what was happening to Plaintiff DARRELL WILLIAM WHEELER."  FAC ¶ 97.  It is unclear exactly which event is "the event" referred to in FAC ¶ 97.

-- are insufficient to support causation.  Ellis incurred these economic losses as a result of her own decision to care for Wheeler.  As a result, these losses are not "fairly traceable" to Defendants.  *See Allen*, 468 U.S. at 751.

Ellis' allegation that she was "personally traumatized" by witnessing the harms allegedly inflicted on Wheeler, FAC ¶ 97, is likewise insufficient to demonstrate standing.  Although mental anguish may support a claim for IIED or NIED in some circumstances, Hawaii law does not recognize mental anguish as an injury in circumstances like Ellis'.  A third-party bystander may only state an IIED injury if she suffers from "distress result[ing] in bodily harm" and cannot state an NIED injury claim at all.  Restatement (Second) of Torts § 46 (1965) (limiting IIED claims); *see also Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting the elements of IIED prescribed by the Restatement (Second) of Torts); *Milberger v. KBHL, LLC*, 486 F. Supp. 2d 1156, 1166-67 (D. Haw. 2007) (declining to extend a right of action for NIED to a bystander who was not "closely related" to the injury party).  Ellis does not allege that she suffered from distress resulting in bodily harm and she is not closely related to Wheeler. Thus, the fact that Ellis felt "personally traumatized" by witnessing the alleged

injuries inflicted upon Wheeler is insufficient to show any injury in fact.[10]

The court finds that Ellis has failed to establish any injury in fact that is fairly traceable to Defendants' conduct.  As a result, Ellis lacks standing to pursue all claims.

## C.      Failure to State a Claim upon Which Relief Can Be Granted

Moving Defendants contend that Counts VI and VII must be dismissed because they fail to state a claim upon which relief can be granted.  The court agrees.

### 1.      *Count VI: Defamation, HIPAA Violations, and Confidentiality of Medical Information Act of 1981 Violations*

In Count VI, Wheeler raises a claim for defamation and alleges violations of HIPAA and California's Confidentiality of Medical Information Act.  Although unclear, Wheeler's claims in Count VI apparently arise from his allegations that HMC improperly released Wheeler's medical records.  Wheeler contends that his records from HMC contained information known by HMC to be false.  Wheeler further contends that HMC "lied to Plaintiffs and fraudulently told them that they had done an investigation and determined that [Wheeler's] injuries and care were not caused by Defendants."  FAC ¶ 85.

---

[10]  Alternatively, even if Ellis had standing to pursue her IIED and NIED claims, the court finds that Ellis' allegations of injury are insufficient to state a claim for IIED or NIED upon which relief can be granted.

As an initial matter, the Confidentiality of Medical Information Act of 1981 is a California statute.  Cal. Civ. Code § 56 *et seq*.  California law does not appear to apply to Wheeler's claims because all of the complained of acts occurred in Hawaii.  Further, HIPAA does not give rise to a private cause of action.  *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *see also Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083-84 (9th Cir. 2007) (noting that HIPAA "does not specify either how to protect privacy or to transmit health records efficiently and effectively").

In any event, all of the allegations in Count VI concern acts allegedly committed by HMC.  Because Plaintiffs' claims against HMC are barred by the Eleventh Amendment, Wheeler cannot maintain his Count VI claims against HMC.

The court finds that amendment would be futile -- particularly in light of HMC's Eleventh Amendment immunity -- and DISMISSES with prejudice Wheeler's Count VI claims for failure to state a claim upon which relief can be granted.

### 2.   *Count VII: RICO*

In Count VII, Wheeler asserts a RICO claim against all Defendants. To state a claim for a civil RICO violation, a complaint must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985).  "Racketeering activity" is

defined by statute in 18 U.S.C. § 1961(1).

Although not entirely clear, Wheeler's RICO claim alleges that

(1) Defendants engaged in mail fraud, FAC ¶ 94, (2) Rehab Hospital falsified

Wheeler's medical records to receive additional payments and cover up acts of

medical malpractice, *id*., (3) HMC administered unnecessary and harmful

treatments to Wheeler, *id*. ¶ 95, (4) HMC misdiagnosed Wheeler, *id*. ¶ 96,

(5) unspecified people tampered with and falsified Wheeler's medical records, *id*. ¶

97, and (6) Rehab Hospital chemically restrained Wheeler against his will, *id*.

¶ 98.

Wheeler expands on these allegations in his RICO Case Statement.

Doc. No. 58.  In the RICO Case Statement, Wheeler suggests that a letter from

LitNeutral -- a non-party entity that acts as a claims administrator for HMC -- and

his discharge summary from Rehab Hospital are both evidence of mail fraud.  *Id*. at

15 (citing FAC Exs. C, F).  The RICO Case Statement also alleges that multiple

Defendants participated in a "scheme to defraud" Wheeler's insurance by altering

and destroying Wheeler's medical records, assaulting him, "up coding" his

condition, and "patient dump[ing]" Wheeler on other medical facilities.  *Id*. at 3-8.

The RICO Case Statement does not indicate specific predicate acts, but lists over a

dozen state and federal laws that Defendants allegedly violated.  *Id.* at 10-11.

Of the acts and violations alleged in Count VII and in the RICO Case Statement, only mail fraud is a "racketeering activity" pursuant to § 1961(1).[11] Wheeler's additional citations in the RICO Case Statement to over a dozen remaining statute and federal laws are not relevant to a RICO claim.

As to his mail fraud allegations, Wheeler does not satisfy the required pleading standard.  When a claimant alleges fraudulent acts, such as mail fraud, as the predicate acts in a RICO claim, Rule 9(b) of the Federal Rules of Civil Procedure "requires that circumstances constituting fraud be stated with particularity."  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  Count VII and the RICO Case Statement apparently identify two mailings -- Exhibits C and F to the FAC -- but do not comply with Rule 9(b) because they do not state circumstances with particularity that make clear the time, place, or specific content of each misrepresentation at issue.

Further, the two exhibits Wheeler identifies as evidence of mail fraud do not, in fact, support his allegations.  *See* Doc. No. 58 at 15 (citing FAC Exs. C, F).  The first exhibit, Exhibit C, is the letter from LitNeutral, a non-party.  The

---

[11]  Violations of the health care fraud statute, 18 U.S.C. § 1347, HIPAA, 42 U.S.C. § 1320 *et seq.* and the False Claims Act, 31 U.S.C. § 3729 and 18 U.S.C. § 287, are not predicate acts under RICO.  18 U.S.C. § 1961(1).

letter merely states that Wheeler was admitted and treated for a head injury in October 2002, advises Wheeler to seek legal counsel, and informs Ellis that her claim for damages had been denied.  FAC Ex. C at 1-2.  Thus, the LitNeutral letter does not appear to further any alleged scheme to defraud.  The second exhibit, Exhibit F, is Wheeler's discharge summary from Rehab Hospital, which Wheeler alleges contains false information in its recital of his treatment history and discharge diagnoses.  Wheeler does not allege that the discharge summary was ever mailed.  In any event, it is unclear how the discharge summary would further any alleged scheme to defraud if it were mailed.  In sum, Plaintiff's exhibits do not supplement his generalized pleadings in support of his mail fraud claims.

Wheeler's RICO claim also appears to be barred by the statute of limitations.  Civil RICO violations are subject to a four-year statute of limitations period. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  Although it is not entirely clear when the alleged mail fraud occurred, the alleged unnecessary and harmful medical treatment all occurred prior to Wheeler's discharge from Rehab Hospital on March 25, 2003.  Further, the false statements Wheeler identifies in Count VII are from the Rehab Hospital Discharge Summary, attached to the FAC as Exhibit F, which was apparently drafted upon Wheeler's

discharge from the Rehab Hospital on March 25, 2003.

The court has considered in detail the factual allegations in the RICO Case Statement in addition to the FAC and its exhibits.  As described above, however, these allegations and exhibits do not support a RICO claim.  Given the details already provided to the court and all of the problems identified above, the court finds that amendment would be futile.  Accordingly, the court DISMISSES WITH PREJUDICE Wheeler's claims in Count VII for failure to state a claim upon which relief can be granted.

**D.    Summary Judgment**

Moving Defendants contend that the court should grant summary judgment in their favor on all remaining claims in the FAC because Plaintiffs failed to file within the applicable statutes of limitations.  The court agrees, and addresses the remaining counts in turn.

### 1.    Counts I and II: § 1983 Claims

In Count I, Wheeler asserts § 1983 claims based on the Fourth and Fourteenth Amendments against Edwards, Garons, Nakamura, Roe, Lau, and Wong, among others.  Wheeler alleges that his due process rights were violated because he was subjected to allegedly unreasonable seizures, unlawful arrests, and excessive force.  In Count II, Wheeler asserts § 1983 claims on the same grounds

against QMC and Rehab Hospital, among others.  Wheeler's § 1983 claims all concern conduct that occurred prior to his discharge from Rehab Hospital on March 25, 2003.

In § 1983 actions, courts apply the forum state's statute of limitations for personal injury actions and that state's tolling provisions.  *Canatella v. Van de Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007).  As a result, Plaintiff's § 1983 claims are subject to the two-year statute of limitations set forth in HRS § 657-7, which provides that "[a]ctions for recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after . . . ."  In Hawaii, the two-year statute of limitations is tolled for infancy, insanity, and imprisonment, as set forth in HRS § 657-13.  Although this court looks to state law to determine the applicable statute of limitations and tolling provisions, the determination of when a cause of action begins to accrue turns on federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").  Under federal law, a cause of action accrues when the "plaintiff knows or had reason to know" of the injury, which is the basis for the claim.  *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992); *see also Wallace*, 549 U.S. at 391 (stating claim accrues when wrongful act results in damages).

24

Wheeler's Count I and II claims accrued when he knew, or had reason to know, of his injuries.  Based on the FAC, Wheeler knew, or had reason to know, of his injuries by March 2003 when he was discharged from Rehab Hospital.  Although Wheeler alleges in a conclusory fashion that he only "became mentally aware that he needed to pursue a claim for his damages and injuries" at some time "last year" -- presumably at some point in 2008 or 2009 -- the record clearly shows otherwise.  By March 2003, Ellis, Wheeler's legal guardian, had actual knowledge of Wheeler's possible legal claims -- she witnessed the alleged wrongdoings as they occurred in October 2002 through March 2003.  FAC ¶ 95, 96, 97.  As a result, Wheeler's § 1983 claims accrued and the statute of limitations began to run in March 2003 and expired in March 2005 -- well before Wheeler filed his Complaint on November 5, 2009.[12]

In opposition, Wheeler present three exhibits: (1) an affidavit from Warkentin, a nurse who formerly worked at HMC, (2) a list of Ellis' expenses, and (3) a letter from HMC's claims adjustor advising Plaintiffs that "Wheeler's claims may be barred by the statute of limitations."  Doc. No. 100 Ex. A at 1.  Wheeler's reasons for submitting these exhibits are unclear.  None of the exhibits addresses

---

[12]  None of the exceptions for tolling applies.  Wheeler does not allege that he suffered from insanity, and he was not impacted by infancy or imprisonment during the time period at issue.

when Wheeler learned of his injuries, with the possible exception of Warkentin's affidavit.  Warkentin's affidavit is unclear, but appears to suggest that Warkentin told Ellis in October 2003 of Wheeler's alleged mistreatment while he was a patient at HMC.  *Id.*  Yet even if Wheeler somehow did not learn of his injuries until this conversation occurred, his claims nevertheless would have accrued and began to run well before two years prior to his November 5, 2009 filing.  Thus, Wheeler does not present a question of material fact concerning either accrual or tolling of the statute of limitations.

In further opposition, Wheeler contends that the statute of limitations was tolled because the present action "relates back" pursuant to Federal Rule of Civil Procedure 15(c) to a Northern District of California action filed by Plaintiffs on April 27, 2009.  That action was dismissed without leave to amend because the court found that Plaintiffs' claims were likely time-barred and, in any event, that the court lacked jurisdiction.  *Wheeler v. Hilo Med. Ctr.*, No. C 09-1826 (N.D. Cal. Oct. 6, 2009).  The Northern District of California court gave no indication that any later filed action in either that district or another district would "relate back" to the dismissed case.  The FAC does not relate back to that dismissed action because "Rule 15(c) simply does not apply where, as here, the party bringing suit did not seek to 'amend' or 'supplement' his original pleading, but, rather, opted to file an

26

entirely new [action] at a subsequent date." *Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001) (noting that a dismissal without prejudice leaves the plaintiff "in the same situation as if [the] first suit had never been filed" for purposes of Rule 15(c)); *cf. Marcoux v. Shell Oil Prods. Co.*, 524 F.3d 33, 40-41 (1st Cir. 2008) (affirming district court's decision to permit a newly filed action to "relate back" to a prior action where the district court had explicitly granted the parties leave to file a new action "which may be deemed to be related" to the original action), *aff'd in part and rev'd in part*, *Mac's Shell Serv. Inc. v. Shell Oil Prods. Co.*, 130 S. Ct. 1251 (2010).  Moreover, the April 27, 2009 filing in the Northern District of California case also occurred well after the two-year statute of limitations period elapsed.

In sum, the court finds that no question of material fact remains concerning whether Wheeler's § 1983 claims are barred by the statute of limitations.[13]  Accordingly, the court GRANTS summary judgment to Moving Defendants on Wheeler's claims in Count I against Edwards, Garons, Nakamura, Roe, Lau, and Wong and in Count II against QMC and Rehab Hospital.

---

[13]  Given the court's ruling on the statute of limitations, the court does not reach the issue of whether Moving Defendants are "state actors" for the purposes of § 1983 liability.

27

**2.      *Counts III, IV, V, and IX: Battery, IIED, False Imprisonment, Negligent Infliction of Emotional Distress***

In Counts III, IV, IX, and V Wheeler asserts claims for battery, IIED, NIED, and false imprisonment against all Defendants.  These claims likewise all concern conduct that occurred prior to Wheeler's discharge from Rehab Hospital on March 25, 2003.

Battery, IIED, false imprisonment, and NIED are all tort claims to recover compensation for damage or injury.  As a result, these claims are subject to the two-year statute of limitations in HRS § 657-7, as well as the tolling and accrual provisions set forth above.[14]  As discussed above, Wheeler's claims accrued when he knew, or had reason to know, of his injuries in March 2003. Again, none of the exceptions for tolling applies.  Accordingly, the two-year statute of limitations period ran from March 2003 until March 2005 -- and ended well before Wheeler filed his Complaint on November 5, 2009.

Plaintiffs raise the same opposition arguments refuted above and, for the reasons previously discussed, the court again finds that no question of material fact remains concerning the statute of limitations.  Accordingly, the court

---

[14] State law, rather than federal law, governs the accrual period concerning Plaintiffs' state law tort claims.  The same accrual provisions discussed above apply, however, because the same accrual rule -- *i.e.*, the discovery rule -- applies to both the federal and Hawaii state law claims at issue. *See Lin v. Lin*, 2008 WL 4369771, at *5 (D. Haw. Sept. 24, 2008) (collecting Hawaii cases applying the discovery rule).

GRANTS summary judgment to Moving Defendants on Counts III, IV, V, and IX.

### 3.    *Count VIII: Negligence*

In Count VIII, Wheeler alleges a claim for negligence.  As to Moving Defendants -- all of whom are doctors or medical providers -- Count VIII is a medical tort action.[15]  HRS § 657-7.3.  Wheeler's allegations in Count VIII all concern conduct that occurred prior to his discharge from Rehab Hospital on March 25, 2003.

The statute of limitations for medical tort actions is set forth in HRS § 657-7.3, which provides that "[n]o action for injury or death . . . shall be brought more than two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death."  Section 657-7.3 provides for tolling of the six-year statute of limitations "for any period during which the person has failed to disclose any act, error, or omission upon which the action is based and which is known to the person."  Once a guardian is appointed to protect the property of a disabled person, however, the statute of limitations on that disabled person's personal injury claims begins to run

---

[15]  To the extent any of Wheeler's other claims -- including his battery and false imprisonment claims -- could also be construed as medical tort claims, the court's examination of the statute of limitations applicable to Count VIII applies likewise to those claims.

unless the guardianship terms are limited to exclude the power to pursue legal claims. *Zator v. State Farm Mut. Auto. Ins. Co.*, 69 Haw. 594, 598, 752 P.2d 1073, 1076 (1988).

"[T]he discovery rule [in HRS § 657-7.3] prevents the running of the statute of limitations until [the] plaintiff [has] knowledge of those *facts* which are necessary for an actionable claim before the statute begins to run." *Hays v. City & County of Honolulu*, 81 Haw. 391, 398, 917 P.2d 718, 725 (1996) (internal citations omitted). The discovery rule does not "delay the start of the limitations period until the plaintiff learns of the legal duty upon which he or she may base a cause of action." *Id.* In other words, "legal knowledge of defendant's negligence is not required" for a medical tort cause of action to accrue. *Buck v. Miles*, 89 Haw. 244, 249, 971 P.2d 717, 722 (1999) (citing *Hays*, 81 Haw. at 399, 917 P.2d at 726).

In this case, Ellis was appointed as Wheeler's guardian in June 2003. At that time, the two-year statute of limitations began to run by virtue of Ellis' appointment. Further, by that time, Ellis had actual knowledge of Wheeler's possible legal claims. Ellis witnessed many of the wrongdoings now complained of at the time they occurred in October 2002 through March 2003. FAC ¶¶ 95, 96, 97. Additionally, a report submitted in the guardianship proceedings included

information about Wheeler's improper penicillin injection and stated that "[t]he

purpose of this guardianship of [Wheeler's] property is to have someone appointed

to protect, investigate and pursue possible personal injury claims that the protected

person may have against the parties (including Hilo Medical Center, the emergency

room physician, unknown assailant) which have caused his injuries." FAC Ex. A

at 1-2.

      As a result of Ellis' appointment in June 2003 and Plaintiffs'

discovery by that time of the injuries at issue, the two-year statute of limitations

began to run by June 2003. Neither the six-year statute of limitations nor the

tolling provision in § 657-7.3 apply. Plaintiff's opposition arguments, discussed

above, again fail to raise a genuine issue of material fact concerning accrual or

tolling of the statute of limitations. Accordingly, the court GRANTS summary

judgment to Moving Defendants on Count VIII because no question of material

fact remains that Wheeler's negligence claim is time-barred.

## V. <u>CONCLUSION</u>

      Based on the above, the court GRANTS HMC's Motion to Dismiss,

DISMISSES Ellis' claims for lack of standing, GRANTS Moving Defendants'

Motion to Dismiss at to Counts VI and VII, and GRANTS Moving Defendants'

Motion for Summary Judgment as to Counts I - V, VIII, and IX. The claims

remaining are:

1.    Count I as to Schurra, Smith, Yu, and Richard Roe;

2.    Count II as to Schurra and Hawaii Air Ambulance;

3.    Count III as to Schurra, Smith, Hawaii Air Ambulance, Yu, Richard Roe, Vea and Cabanting;

4.    Count IV as to Schurra, Smith, Hawaii Air Ambulance, Yu, Richard Roe, Vea and Cabanting;

5.    Count V as to Schurra, Smith, Hawaii Air Ambulance, Yu, Richard Roe, Vea and Cabanting;

6.    Count VIII as to Schurra, Smith, Hawaii Air Ambulance, Yu, Richard Roe, Vea and Cabanting; and

7.    Count IX as to Schurra, Smith, Hawaii Air Ambulance, Yu, Richard Roe, Vea and Cabanting.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 27, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Wheeler v. Hilo Med. Ctr.*, Civ. No. 09-00533 JMS/KSC, Order (1) Granting Hilo Medical Center's Motion to Dismiss, (2) Dismissing Plaintiff Ellis' Claims for Lack of Standing, (3) Granting Moving Defendants' Motion to Dismiss as to Counts VI and VII, and (4) Granting Moving Defendants' Motion for Summary Judgment as to Counts I - V, VIII, and IX